**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
HELENA DIVISION**

DOLLETHER TOBAR                                                                    PLAINTIFF

v.                                     No. 2:07CV00153 JLH

ARKANSAS DEPARTMENT OF CORRECTION
and ROBERT JACKSON                                                            DEFENDANTS

<u>**OPINION AND ORDER**</u>

Dollether Tobar commenced this action against the Arkansas Department of Correction and Robert Jackson for sexual discrimination and harassment as well as retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-23-101, *et seq.* Tobar also alleges the tort of outrage under Arkansas law. The Arkansas Department of Correction has moved for summary judgment and Tobar has responded. In her response, Tobar withdrew her claim based on outrage but otherwise opposes the summary judgment motion. For the following reasons, the motion for summary judgment is granted.

**I.**

From September 2005 through July 29, 2006, Dollether Tobar was employed by the Arkansas Department of Correction as a sergeant at the East Arkansas Regional Unit. At the same time, Robert Jackson was employed at the East Arkansas Regional Unit as an assistant warden, and in that position he had supervisory authority over Tobar. Tobar alleges and the Arkansas Department of Correction does not dispute that during this time Jackson made inappropriate innuendoes and comments and unwelcome phone calls to Tobar. On December 21, 2005, Jackson exposed his genitals to Tobar, and on January 5, 2006, he grabbed Tobar and kissed her.

The parties also agree that Tobar filed a grievance with East Arkansas Regional Unit Warden Greg Harmon in February 2006, although they construe the grievance differently. Tobar considers that grievance to be her first complaint of sexual harassment, even though she admits that since she was afraid of Jackson she did not mention sexual harassment and instead mentioned deliberate indifference and intentional malice in that complaint. The Arkansas Department of Correction says that while the grievance may have been intended as a sexual harassment complaint, it was not one because it did not mention anything of that nature. The parties agree that the Arkansas Department of Correction has a written policy that prohibits sexual harassment and that provides for a way for such allegations to be reported. It is undisputed that Tobar has completed several hours of training, including a course titled "Sexual Harassment and Misconduct." While Tobar concedes that there is a policy and that she is well-trained in the policy, she also asserts that the environment at the Arkansas Department of Correction discourages women officers from reporting sexual harassment and that nothing is done when reports are made.

Sometime between March 13, 2006 and March 21, 2006, Tobar received an "oral warning" related to her work from Captain Dennis Jackson. She also received an oral warning from Lieutenant Ester on March 15, 2006. Although the parties do not dispute the existence of these two warnings, the Arkansas Department of Correction notes that the warnings were not recorded in her file and her file does not indicate any formal disciplinary action taken against Tobar. Tobar points out that multiple oral warnings can result in disciplinary action and that these warnings were only the beginning of treatment toward her such as hurtful jokes that occurred after she reported sexual harassment allegations against Assistant Warden Robert Jackson.

2

On March 27, 2006, Tobar sent a letter to Arkansas Department of Correction Director Larry Norris and the internal affairs investigator, Michael Deloney, detailing her allegations of sexual harassment by Robert Jackson in accordance with the sexual harassment policy.  On March 31, Norris and Deloney received the information Tobar mailed and Norris forwarded the information to James Gibson, internal affairs administrator at the Arkansas Department of Correction, with instructions to handle Tobar's allegations pursuant to the sexual harassment policy.  Norris also sent a reply letter to Tobar on March 31 to let her know that her allegations would be investigated and to give her Gibson's contact information.  Deloney also interviewed the first witness in the investigation of the sexual harassment allegations on March 31.  The investigation continued through April 6.  During the investigation, Deloney interviewed Tobar twice, Jackson, and four additional employees in addition to reviewing documentary and audio-recorded evidence.  Deloney submitted a final report on the investigation to Gibson on April 6.

The East Arkansas Regional Unit received a letter of resignation from Robert Jackson on April 12, 2006, setting an effective date of resignation for April 26.  In Jackson's personnel file at the Arkansas Department of Correction, his termination is described as voluntary in lieu of termination, and the fact that he was under investigation for sexual misconduct is documented in his file. According to the Arkansas Department of Correction, the last day Jackson worked there was April 3, 2006.  Tobar never saw Jackson again at the unit after she reported the allegations of sexual harassment.  Tobar contends that while she never saw him again, her co-workers and inmates made jokes and sexual innuendoes directed at her after she reported her allegations which contributed to a hostile work environment.

According to the Arkansas Department of Correction, Tobar submitted information to the EEOC office in Memphis, Tennessee, on May 17, 2006.  On July 29, 2006, Tobar submitted a letter of resignation stating she could no longer work in a hostile environment.  On August 11, 2006, Tobar filed a charge of discrimination with the EEOC and instituted this lawsuit pursuant to the right to sue letter issued by the EEOC.

## II.

A court should enter summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).  A genuine issue exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.  In deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party and draws all inferences in his favor, mindful that summary judgment seldom should be granted in discrimination cases where claims are often based on inferences. *Peterson v. Scott County*, 406 F.3d 515, 520 (8th Cir. 2005); *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000) (collecting cases).  *But see Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J., dissenting).

## III.

### A.   SEXUAL HARASSMENT

The Arkansas Department of Correction, for the purpose of this summary judgment motion, concedes that Tobar has established a prima facie case of sexual harassment and hostile work

environment.  However, The Arkansas Department of Correction argues that it is entitled to the *Ellerth-Faragher* affirmative defense.  An employer is vicariously liable to a victimized employee for a hostile environment created by a supervisor with authority over the employee.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S. Ct. 2275, 2293, 141 L. Ed. 2d 662 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S. Ct. 2257, 2270, 141 L. Ed. 2d 633 (1998).  In that situation, "[w]hen no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence . . . ."  *Ellerth*, 524 U.S. at 765, 118 S. Ct. at 2270.  "The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  *Id.*

It is undisputed that Robert Jackson had supervisory authority over Tobar.  The Arkansas Department of Correction argues that there was no tangible employment action.  The Arkansas Department of Correction says that the two oral warnings Tobar received do not rise to the level of a "tangible employment action," which the Supreme Court defined in Ellerth as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Id.* at 761, 118 S. Ct. at 2268.  Since Tobar's file did not include information about the oral warnings or reveal that any formal disciplinary action was taken against her, it is clear the warnings themselves did not create any significant change in her employment that would be considered a tangible employment action.

5

Tobar does not say the oral warnings she received were a tangible employment action. Instead, Tobar argues that her constructive discharge was the tangible employment action. To prove constructive discharge, a plaintiff must show that "'(1) a reasonable person in her situation would find the working conditions intolerable and (2) the employer . . . intended to force the employee to quit.'" *Brenneman v. Famous Dave's of America, Inc.*, 507 F.3d 1139, 1144 (8th Cir. 2007) (quoting *Tatum v. Ark. Dep't of Health*, 411 F.3d 955, 960 (8th Cir. 2005)). "'To be reasonable, an employee must give her employer a reasonable opportunity to correct the problem.'" *Campos v. City of Blue Springs, Mo.*, 289 F.3d 546, 550-51 (8th Cir. 2002) (quoting *Jackson v. Arkansas Dep't of Educ., Vocational & Technical Educ. Div.*, 272 F.3d 1020, 1026 (8th Cir. 2001)). "In other words, '[a] plaintiff must take affirmative steps short of resigning that a reasonable employee would take to make her conditions of employment more tolerable.'" *Id.* at 551 (quoting *Jones v. Fitzgerald*, 285 F.3d 705, 716 (8th Cir. 2002)). In her deposition, Tobar said that the "hostile environment" that she said she needed to get away from in her resignation letter was being around Assistant Warden Jackson, and the disciplinary actions taken against her. However, Jackson had not worked at East Arkansas Regional Unit since April 3, and Tobar had not seen him since she filed the sexual harassment complaint against him. In her deposition, Tobar also mentioned that there had been hurtful jokes and inappropriate comments made by her co-workers and inmates after she made her sexual harassment claim and it was investigated. However, she never filed any formal complaints or grievances with her employer regarding this treatment nor did she name anyone specifically who was harassing her at that time. By never reporting any harassment by others that occurred to her after the investigation of the March 27 sexual harassment complaint, Tobar did not take affirmative steps short of resigning to make her conditions more tolerable.

6

If Tobar were able to show that a reasonable person in her situation would find the working conditions intolerable, she would also have to show that her employer intended to force her to quit. If a plaintiff cannot show that her employer intended to force her to quit, she can still show constructive discharge if her employer could have reasonably foreseen that she would quit as a result of the employer's actions. *Brenneman*, 507 F.3d at 1144.  Once Tobar filed her complaint of sexual harassment, Larry Norris responded by March 31 to let her know an investigation was being started and the first witness was interviewed that day.  Within a week the investigation was completed. Robert Jackson resigned April 12.  The fact that he did so instead of being terminated and that he was under investigation for sexual harassment were noted in his file.  Since Tobar did not complain of other sexual harassment issues, including the comments and jokes that apparently came from her co-workers and inmates after she made her sexual harassment claim, it would be impossible for anyone at the Arkansas Department of Correction to foresee that she would quit because there is no evidence that anyone was aware that she continued to suffer harassment or an adverse environment after the beginning of April.  Tobar is unable to show she was constructively discharged, so she did not suffer a tangible employment action.

Since no tangible employment action was taken, the Arkansas Department of Correction may raise the *Ellerth-Faragher* affirmative defense if it can show that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and that Tobar "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807, 118 S. Ct. at 2293; *Ellerth*, 524 U.S. at 765, 118 S. Ct. at 2270.  As to the first part of the defense, there are two prongs: prevention and correction. *Brenneman*, 507 F.3d at 1145.  With respect to the prevention prong, "the employer must have

exercised reasonable care to prevent sexual harassment." *Id.*  The existence of a sexual harassment policy does not itself show that a defendant exercised reasonable care, but distribution of a valid policy provides compelling, although not dispositive, proof of preventing sexual harassment.  *Id.* It is even more compelling if a plaintiff in such a case received training specifically about the policy. *Id.*; *E.E.O.C. v. CRST Van Expedited, Inc.*, ___ F. Supp. 2d ___, No. 07-CV-95, 2009 WL 1175169, at *32 (N. D. Iowa Apr. 30, 2009).  It is undisputed that the Arkansas Department of Correction had a sexual harassment policy in effect at all times relevant to this lawsuit, that Tobar received a copy of the policy, and that she received training about the sexual harassment policy.  Given these undisputed facts, the Arkansas Department of Correction has shown that it exercised reasonable care to prevent sexual harassment.

"Under the correction prong, the employer must have promptly corrected any sexual harassment that occurred." *Brenneman*, 507 F.3d at 1145.  "Generally, where the employer responds to a sexual harassment complaint in such a way as to promptly stop the sexual harassment, there is no basis for finding employer's postcomplaint actions not sufficiently corrective." *Weger v. City of Ladue*, 500 F.3d 710, 723 (8th Cir. 2007).  With respect to Tobar's complaint about Robert Jackson that was submitted March 27, the undisputed facts show that Arkansas Department of Correction promptly corrected the sexual harassment.  An investigation began March 31, Jackson resigned April 12, and Tobar said she never saw Jackson again after she reported the sexual harassment claim against him.  Tobar says, however, that the harassment did not stop because of the hurtful jokes and comments made by her co-workers and inmates that occurred after she filed her sexual harassment complaint against Jackson.  Since Tobar never made a complaint under the policy about those comments and jokes from otherwise unidentified co-workers and inmates, it would be impossible

for the Arkansas Department of Correction to correct that sexual harassment.  There is no evidence that Tobar made anyone at the Arkansas Department of Correction aware of the behavior, and there is also know evidence that shows knowledge in any way of such harassment by the Arkansas Department of Correction.  Tobar also argues that she made her complaint in February and the investigation did not begin until the end of March.  Again, the facts are clear that the report Tobar made in February made no mention of sexual harassment and instead claimed that Jackson treated her with deliberate indifference and intentional malice.  Since she did not make a claim of sexual harassment at that time, the Arkansas Department of Correction would not have known there was any sexual harassment to address or correct.  The undisputed facts show that the Arkansas Department of Correction promptly corrected any sexual harassment that was reported.  The Arkansas Department of Correction has met the first element of the *Ellerth-Faragher* defense to show that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior."  *Faragher*, 524 U.S. at 807, 118 S. Ct. at 2293; *Ellerth*, 524 U.S. at 765, 118 S. Ct. at 2270.

The Arkansas Department of Correction must also show that Tobar "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.*  Although there is no bright-line rule regarding when an employee's failure to file a complaint becomes unreasonable, the Eighth Circuit has held that a four-month delay in invoking an employer's grievance policy was unreasonable. *Weger*, 500 F.3d at 724 (citing *Williams v. Missouri Dep't of Mental Health*, 407 F.3d 972, 976-77 (8th Cir. 2005)).  In *Williams*, the Eighth Circuit held that an employee's failure to report was unreasonable when she knew her supervisor's behavior was inappropriate from the first instance, yet did not report it to anyone, and her co-worker

9

did not report it until four months after the fact.  *Id.* at 977.  Tobar says she began receiving harassing calls and inappropriate comments from Robert Jackson in September 2005, but she did not file a sexual harassment complaint until March 27, 2006.  She argues that she filed a grievance about Jackson's behavior in February 2006, which is also more than a four-month delay in reporting. Likewise, she never reported the harassing comments that she said were made by co-workers and inmates from the time she filed the sexual harassment complaint at the end of March until she resigned in July.  Tobar unreasonably failed to take advantage of any preventive or corrective opportunities offered by the Arkansas Department of Correction or to avoid harm otherwise.  The Arkansas Department of Correction is entitled to the *Ellerth-Faragher* affirmative defense on Tobar's claim of sexual harassment and is therefore entitled to summary judgment.

**B.   RETALIATION**

To make a prima facie case of retaliation under Title VII, a plaintiff must show that: "(1) the employee engaged in protected conduct; (2) reasonable employees would have found the challenged retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct."  *Brenneman*, 507 F.3d at 1146.  The Arkansas Department of Correction concedes that Tobar engaged in protective conduct by filing a sexual harassment complaint, but it argues that Tobar cannot establish the second or third elements of a prima facie case of retaliation.

First, the Arkansas Department of Correction argues that the oral warnings Tobar received in March do not constitute "materially adverse actions" under the second element of a prima facie case of retaliation.  This element is "'objective, requiring us to consider whether a reasonable employee in the plaintiff's position might have been dissuaded from making a discrimination claim because of the employer's retaliatory actions.'"  *Devin v. Schwan's Home Serv., Inc.*, 491 F.3d 778,

785 (8th Cir. 2007) (quoting *Higgins v. Gonzales*, 481 F.3d 578, 589 (8th Cir. 2007)).  In *Devin*, the Eighth Circuit pointed out that retaliatory actions "must be material, producing significant rather than trivial harm."  *Id.* at 786.  In that case, a written warning to the employee did not rise to the level of a materially adverse action.  Here, the two oral warnings that Tobar received were not materially adverse actions because there is no evidence that those warnings impacted Tobar's job at all.  Tobar even concedes that these two "unofficial write ups" would likely not constitute "materially adverse actions" on their own.  However, Tobar argues that the environment at the Arkansas Department of Correction which caused her to resign constitutes a materially adverse action.  The Arkansas Department of Correction points out that the plaintiff must provide sufficient evidence for a reasonable jury to conclude that the protected conduct was a determinative factor in a materially adverse employment action taken by the employer.  *Hervey v. County of Koochiching*, 527 F.3d 711, 722 (8th Cir. 2008).  The environment to which Tobar refers is one in which her co-workers and the inmates made jokes and hurtful comments about her after she filed a sexual harassment claim against Robert Jackson.  Tobar has presented no evidence that the Arkansas Department of Correction had knowledge of that behavior, no evidence that she ever reported that behavior to any of her supervisors, and no evidence that any of her supervisors participated in such behavior.  The facts do not show that the Arkansas Department of Correction took it upon itself to create a hostile environment for Tobar; therefore, Arkansas Department of Correction did not take a materially adverse action against Tobar.  Tobar does not have a prima facie case of retaliation, so the Arkansas Department of Correction is entitled to summary judgment.

11

C.    ARKANSAS CIVIL RIGHTS ACT

Tobar also claims that the Arkansas Department of Correction violated the Arkansas Civil Rights Act, ARK. CODE ANN. § 16-123-101, et seq., based on her sex, sexual harassment, and retaliation.  The Arkansas Department of Correction says it is immune from suit.  The Eleventh Amendment bars any suit against a state in federal court unless the state has consented to suit or Congress has unambiguously abrogated the states' Eleventh Amendment immunity.  *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54-56, 116 S. Ct. 1114, 1122-23, 134 L. Ed. 2d 252 (1996).  The Eleventh Amendment "bars federal court jurisdiction over state law claims against unconsenting states" when the state is the "real, substantial party in interest, regardless of the remedy sought." *Cooper v. St. Cloud State Univ.*, 226 F.3d 964, 968 (8th Cir. 2000) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984)).  "This constitutional bar applies with equal force to pendent state law claims." *Id.*  The Arkansas Department of Correction is a state agency that is "the sole creation of the state" and has "no separate identity" from the state and cannot be stripped of its official character.  *See Glick v. Henderson*, 855 F.2d 536, 540 (8th Cir. 1988).  The Arkansas Civil Rights Act provides: "[n]othing in this subchapter shall be construed to waive the sovereign immunity of the State of Arkansas." ARK. CODE ANN. § 16-123-104.  It is clear that the Arkansas legislature did not intend to waive sovereign immunity by enacting the Arkansas Civil Rights Act, and the Arkansas Department of Correction did not consent to suit.  Therefore, any claims Tobar has made against the Arkansas Department of Correction are barred by sovereign immunity.

## CONCLUSION

Because the *Ellerth-Faragher* affirmative defense applies in this case, the Arkansas Department of Correction is entitled to summary judgment on Tobar's claim of sexual harassment under Title VII.  Tobar cannot make a prima facie case of retaliation, so the Arkansas Department of Correction is also entitled to summary judgment on that claim under Title VII.  Tobar's claims against the Arkansas Department of Correction under the Arkansas Civil Rights Act are barred by sovereign immunity.  The Arkansas Department of Correction's motion for summary judgment is GRANTED.  Document #26.

IT IS SO ORDERED this 7th day of May, 2009.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE